The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. All right, the first case we're going to hear this morning is Martinez v. Holder. And Ms. Sweeney, when you're ready, we'll hear from you. Good morning, Your Honors. May it please the Court, my name is Maureen Sweeney and I represent Julio Martinez, who is petitioning for review of a final Board of Immigration Appeals decision which denies him withholding of removal. I will speak for 13 minutes and then counsel for Amicus American Immigration Lawyers Association will speak for five minutes and I will reserve two minutes for rebuttal. The only issue in this case... Is the 13 connected with Halloween or something? Pardon me? You just arbitrarily picked 13, is that with Halloween? It seemed lucky, Your Honor. The only issue in this case is whether the group of people who make the courageous and life-threatening decision to leave a Salvadoran gang can be recognized as a particular social group for purposes of our humanitarian law. This is a question of law that's subject to de novo review in this court and the decision below is not due any Chevron deference. Is it a question of reach if there's no nexus? Your Honor, the court below did not even get to nexus because it found that there was no particular social group. I would argue that the immigration judge had the question of nexus. She had everything in front of her she needed to find that this was a particular social group. But she cut that question off as did the board member that wrote the decision. I gather if you were to succeed, your request would be to send it back to have them address all the other issues. Yes, Your Honor. We believe that this court could. The only issue that the judge found was this question of a categorical bar to a particular social group. So I believe that the record would support finding a particular social group. But it certainly would be appropriate for this court to remand so that the board could apply its own standard, which it failed to do in this case. So I'm looking at the board's statement. The immigration judge correctly found the respondent did not show a nexus between his claim of past persecution, a clear probability of persecution, because he's not a member of the social group. So you're saying we have to deal with the social group to get to that? Yes, Your Honor. All right. Okay. If there is no social group, there can be no nexus to a social group. And though it's worded to include nexus, the analysis cut off at the question of the particular social group. Does your social group inevitably include persons who don't face retribution upon leaving a gang? Your Honor, the question of social group doesn't address whether or not there is persecution. That's a separate requirement under the withholding statute. And that's one of the things that I'd like to point out, is that the question of particular social group is just one of the aspects of eligibility. In this case, there is no dispute as to the facts. The judge found Mr. Martinez to be credible, and the testimony was clear that he did face retribution. He was actually almost killed twice and shot at a third time by members of the gang. So in this case, as in any case, it's a separate requirement that someone have to prove that they would face retribution. That's not a part of the social group question. It's a separate part of the eligibility for withholding or removal. Do you assume that no one, do you believe your presentation is pinned on a foundation that you cannot leave a gang? Your Honor, there was extensive evidence in the record below that that is the case, that the gangs very specifically target those who leave because they see it as a challenge, a substantive challenge to their authority. And so they view that group as a group that they have to contend with, the group of people who try and leave. I thought documentary evidence of record included about four different avenues for leaving a gang, primarily religious fervor, family unity, also conscription into the military, rehabilitation. What say you to that? Your Honor, the record may show some instances of people who have been able to leave. I think they're very limited. The record also shows extensive evidence of people who were targeted, as well as Mr. Martinez's testimony, which was found credible by the judge, that the gangs spent significant time in their meetings talking about those who left and targeting them, giving them what they called the green light for assassination, simply because they had left the gang, regardless of the reason. In his circumstance, the MS-13 that he belonged to gave no, they made no distinction for the reasons that somebody had left the gang. Well, we have three circuit judges, courts on this. We have the Sixth Circuit and the Seventh Circuit that have agreed with you. Yes, Your Honor. And then the Ninth Circuit, which is a little bit distinguishable. Yes, Your Honor, that's the Arteaga case. And that case is distinguishable because the particular social group there was not former members of the gang, but Mr. Arteaga actually was a continuing member of the gang. He claimed to have become inactive because he was put in prison. But he had never taken any steps to leave the gang, had never made any statements against the gang. That's in contrast to Mr. Martinez, who did directly report to his gang superiors that he had left. I gather the distinction is important because we don't recognize a social group that is a gang and that commits violence and immoral acts. And your argument is that the group of persons who consider themselves, who have left the gang and seek to avoid the gang, ex-gang persons are persons who are trying to combat that violence or leave that behind. And I think that's where the Sixth and Seventh Circuit went on that.  And the case law, the jurisprudence on this issue is very clear that the distinction between current members of a group and past members of a group is very important. The Board itself, in matter of Fuentes, made that distinction between current police officers and past members of the police force. That once someone is a past member of something, there's no way to undo that. The Second Circuit also recognized that in a case in which it seemed to approve a particular social group of former KGB members, people who had been members of the KGB and had been defected from the KGB, and made the distinction between the current members and the past members. That's the distinction that the BIA missed in this case. One of the things that makes it a characteristic immutable is that someone shouldn't be asked to go against a decision of conscience. And in this case, Mr. Martinez's decision to leave the gang was a decision of conscience. He had entered as a very young teenager, a 14-year-old, in a local gang that was later subsumed into the much larger and more dangerous MS-13. You might make too much of a concession because he never called it a gang. He said it was a group of friends. And he did relate how that group was taken over by a gang, and the leader of his little group that was socially met, they were killed. Yes, Your Honor. And he had other friends from his group who left before he did were also killed. But he decided nonetheless, by the age of 16, though the dates are a little unclear, it was certainly before he was 16, he had left the gang already. And that decision is the decision that is the distinguishing factor of this particular social group. By definition, all the members of the group were once members of a gang. But the distinguishing important factor here is that they left the gang. They made a decision to leave. And that's what distinguishes the Ninth Circuit's artiography. How do you define the term former gang member? Your Honor, the facts that would support any particular social group are specific to the cases. In this case, there's no real contest, I think, between the parties that MS-13 is a gang. And we would define the former piece of that as someone who has made definitive steps to leave the gang, as Mr. Martinez did. It seems like his problem really crops up when he goes and tries to reunite with his mother. It is unclear, but in his first affidavit, he says that he was in hiding for several years and lived in different towns. No one knew where I was. But then when he goes back to visit his mother, he gets shot at. Well, that was true on the last occasion, Your Honor. But the first two occasions, he tried to hide out first near where he lived and was stabbed and left for dead. He then moved an hour and a half away, which in El Salvador is a pretty significant difference, to a place where he had never lived. He lived with a distant relative whom he had never met and tried to keep as low a profile as possible. But nevertheless, there the gang did find him and shot him and left him for dead again in the second place. So he did make serious efforts to relocate within El Salvador. And when he was shot at the third time, he finally made the decision to flee. So the transcript and the second affidavit conflict with the first, where he testifies that he had several years of hiding without any trouble? Well, Your Honor, I don't know that it would say that it was without any trouble. He did manage to hide for a while. But in the end, the gang found him. And he believes that they would find him no matter where he was in El Salvador. So I want to just return just briefly to my next question because the BIA, at least in its findings, said that, even if it is a social group, the court founds as a matter that there's a lack of nexus to the claimed social group. That is that you cannot demonstrate that his membership in the claimed social group would at least be one central reason for future prosecution. Well, Your Honor, I think the record belies that conclusion. It's very clear that Mr. Brown— Is that a finding of fact or a conclusion of law? That there was no nexus, Your Honor? There's no persecution. Well, the question of persecution, Your Honor, would go to the physical harm that was done to him. I think that he clearly was persecuted. Is that a finding of fact? But is that a finding of fact? Would that be a finding of fact? Persecution, Your Honor? Yes. Well, I don't think the question of persecution was raised by the BIA. The question of nexus is a question of law. Was there a nexus between the particular social group and the persecution? The court finds that even if it is a social group, that you have not demonstrated that the membership in the claimed social group would at least be one central reason for the future prosecution. Well, Your Honor, that— Is that a question of fact? Is that a determination of fact? I believe nexus is a mixed question of law and fact, Your Honor. And we would ask you to go to the record, which establishes very clearly that when the gang attacked Mr. Martinez, they did so calling him names specifically that had to do with being a gang member or being an inadequate gang member. If it's a question of fact, fact, it binds us, I take it, because of the drug conviction. It's a mixed question, Your Honor, of fact and law. And the question—I would argue that the court never got to nexus, though they used the word nexus. The real question here was particular social group and whether it was a particular social group. Is the record clear on each of the occasions of attack that he was being attacked by MS-13 or by the opposing gang? Is there a possibility of that? No, Your Honor. Each time, he recognized the individuals who attacked him as MS-13 members. Each time? Yes, Your Honor. With the possible exception of the last shooting, which happened from a distance. But the two incidents where he was attacked from up close, he recognized them as MS-13 members. So tell me again, what was required for Mr. Martinez to be classified as having left the group? And what is the test that we should articulate as indicating one has left a group? I would say, Your Honor, that someone would have to take definitive steps to have left the group and that those steps became known to the gang, both of which were the case for Mr. Martinez. He actually spoke to his superiors in the gang, a gentleman named Psycho, who then proceeded to have his cohort attack Mr. Martinez in response. So I would, in a way to clarify the distinction between the Ninth Circuit case and this case, ask that the court require that there be some definitive steps to leave the gang, which Mr. Martinez clearly took. In this case, I guess my time is up, Your Honor. I see the red light is on. Okay. You had some rebuttal. And a short rebuttal, and we'll hear from Amicus at this point. Thank you. May it please the Court, Benjamin Casper for Amicus, the American Immigration Lawyers Association, in support of the petitioner. In the time I have, I'd like to highlight three reasons why the court should grant the petition and send this case back to the BIA, and I'll summarize them quickly up front. First, the unpublished decision is inconsistent, as the petitioner stated, with longstanding board precedent, Acosta and Fuentes, that do hold that former membership, former shared past experiences can unite a particular social group. Second, the BIA decision asserts a sweeping extra statutory bar to relief that Congress has not authorized, and there's no reason, Amicus contends, that Congress would categorically eliminate protection for deserving, withholding, and asylum applicants, especially those like young children who are forced with credible threats of death into association with the gang. And so we just don't think that makes a lot of sense, and we don't think Congress would intend that. Third, as we mentioned in our brief, we don't think the court should give force of law to the BIA's unpublished, scantily explained decision here. Even if we don't give it Chevron deference, we can give it Skidmore deference, is that correct? That's right, Your Honor. This court has never actually addressed whether an unpublished decision gets Chevron or meets Skidmore, but every court that has addressed that question has noted correctly in the petitioner's brief. So we can consider persuasive. You could consider it in the inherent persuasiveness of it, or you could send it back for further explanation, which would be potentially reasonable in light of the flux in which the social group jurisprudence of the board stands right now. You know, as we mentioned in our brief, the Third Circuit case Valdivieso-Galdamez remanded on the particularity and social visibility of this controversial new test on top of Acosta. So how Acosta relates to the social group case law is a question that the board is grappling with right now. And on remand in the Third Circuit case, it has submitted amicus briefs from us, from other organizations, including UNHCR. And DHS has filed a brief, which we mentioned in our amicus brief, suggesting that they adopt a whole new standard, you know, so recalibrating Acosta in relationship to the overall jurisprudence. And in that context, I think that's a fine reason for the court to send it back rather than step in, elevate an unpublished additional controversial amendment to the Acosta standard. I think that would just complicate the board's current reevaluation. It would counsel them in favor of remand. What's the significance here that the IJ mentioned lack of social visibility in non-gang member group, former gang member group, and the BIA didn't mention? I think that's highly significant. I mean, I think the question is, what's the decision under review? Here, quite clearly, they did not explicitly adopt or affirm the IJ decision. They rendered their own decision, and they limited the analysis to the immutable characteristics test under Acosta. They didn't address, the board didn't address the nexus either. It did not. It's just the IJ. Petitioner is quite correct that that's language that's almost always just associated. There's some mention of nexus on the way to particular social groups. If I understand the board's opinion, it says basically we're going to follow the Ninth Circuit decision because the group is basically a violent group, and it's defined by a violent group, and therefore we don't recognize it. But it doesn't seem to take into account the analysis that the Sixth and Seventh Circuit does when somebody leaves a violent group, and for conscientious reasons of nonviolence, and because of that is subjected to execution. That's exactly right, and we are four square behind the analysis of the Seventh and Sixth Circuits. I think the Sixth Circuit's case, Urbina-Mejia, is particularly helpful in illustrating of why it just doesn't make sense to graph this on the social group ground. I mean, that's not the purpose. You already have this fully adequate statutory bar under the serious nonpolitical crimes exemption. We talk about that in our brief, and I would just like to mention one thing that we didn't get into our brief. We talked about the Trafficking Victims Protection Act, which treats children as a special category of people deserving of extra protection, not categorical exclusion. We didn't mention that in the same year that that was passed, October 3, 2008, Congress passed Public Law 110-340, that's 122 Statute 3735, the Child Soldiers Accountability Act, and there Congress instructed DHS and the Department of Justice to designate those who use or recruit children as child soldiers as committing serious nonpolitical crimes. So it's quite clear that Congress intends that bar to do the work that needs to be done and that it can cull the hardened criminals who exploit children like Martinez and people much younger and yet leave protection for them. But the notion that Congress, in light of the way it treats children throughout the act, and especially in the asylum context, want to categorically bar them from relief at this initial stage of determining what a social group is just doesn't make any sense, and we think the evidence Congress has laid out throughout the act and in these statutes in particular makes that quite clear. Before you said the particularity requirement, what is it that you say establishes that, the particularity requirement of the social group? Well, the board, there's board case law, unlike here, you do have published board decisions on which that's hinged, SEG and EAG. You don't have that here, which is another great reason to send it back, because this is an ACOSTA amendment that's not grounded in published board case law. And those are gang member type cases? Yeah. And this circuit has very carefully stepped back, avoided dealing with social visibility and acknowledging that, citing the Seventh Circuit every time, three times. But it has adopted particularity. But again, the board is looking at it all. The board only addressed immutability, right? The board only addressed immutability. In this case, only immutability. Well, that's what we're talking about, this case. And they only addressed immutability, and the issues of visibility and particularity still have to be analyzed, if the board wants to. Yeah, the board has to do that in the first instance of opposition. They have not done that yet. They have not. Yeah. Thank you. All right.  I wrote you a photo. A photo. Good morning, Your Honors. May it please the Court. Remy D'Arichel Foti, representing the Attorney General. Do you want to speak up just a hair? Thank you, Your Honor. The government will rest on its brief on the other side issues in this case, and will address the main issue in this case, which is the social visibility issue. We believe that a petition for review should be dismissed or denied. Can you just pull the microphone closer to you? Thank you. Now, the main issue in this case is whether petitioners' proposed social group of former gang members, whether entered into voluntarily or forcibly, qualifies as a particular social group. The board reasonably relied on the Ninth Circuit's Arteaga decision, and holding that the petitioners' proposed social group of former gang members did not pass the immutability test. How come the board didn't address the Sixth Circuit and Seventh Circuit, which are much closer and more fully analyzed? The Ninth Circuit basically said gang members are not a mutable group, whether active or inactive, and sort of swept it in with that statement. But if you look at somebody who forms a group to oppose a gang, leave a gang, that's violent and will not let him leave on the threat of execution, that's been recognized by every circuit that's addressed it, which is the Sixth and the Seventh. And you have Judge Posner in the Seventh, and in the Sixth you have that well-reasoned opinion, and that's not even addressed by the BIA. As a matter of fact, the board relied on that statement, which says gang members. Well, no one has suggested that gang members ought to be a social group. It says, we agree with the Court of Appeals for the Ninth Circuit, which has rejected gang members as a social group. Of course that's right, but it's misapplied. Your Honor, the Arteaga decision also addressed the issue of people who attempt to disassociate themselves from gang membership, and did specifically mention the act of disassociating yourself. I'm sort of surprised at the overall approach here by the BIA. Here you have a young man that got subsumed into a gang unwittingly. He didn't participate, didn't want to participate in the way the gang operated, terrorizing the local groups and beatings, and he learned, he was sucked in, and he said, I want to leave. And they say, you can't leave. And if you leave, you get a green light, which means you get shot. And there were actual examples of people who got shot. This man left out of conscience. He was left for dead twice. He goes to his mother, he's finally shot at, and leaves. Now, this is just the type of person that you recognize as a social group, a person that's opposing the gang. Well, Your Honor, there is a model. He didn't voluntarily even enter into the gang. He participated in the initiation. He got beat. But I'm sort of surprised that you would press it like this. Now, there may be other reasons to press it, some reasons we don't see,  Well, Your Honor, as you're probably aware, there are many people who have resisted joining a gang member and have been killed on that basis, according to the record here. And no court of appeals has ever ruled that resisting gang membership, doing the noble thing. No, somebody who has left a gang member. And the BIA said, therefore, the social group is better framed as former members of a gang in El Salvador. Yes, Your Honor. Now, that's the way the BIA recognized it. So take that group that they posit, you're stuck with that, and say former gang members, and in this case, former gang members who left because the gang was violent and who did not participate in the persecution of the gang. Yes, Your Honor. There's no suggestion of that. And so the question is, why isn't that a particularized, not a particularized, an immutable group? And that's the only issue decided by the BIA. It did not address visibility. It did not address particularity. That's correct, Your Honor. And if you're wrong on this, the board should have the opportunity to address those. Okay. Starting from the point of view that, to date, no court of appeals has held that people who refuse to join a gang constitute a particular social group. Don't phrase it that way. Don't return.  He left a gang. Yes, Your Honor. He left a gang. The Fifth Circuit and the Seventh Circuit have said persons who have left gangs for persons of conscience are an immutable social group. Yes, Your Honor. They have addressed that issue and they have made that finding. But the problem with that finding, Your Honor, is that the two courts did not address the fact that petitioner's past membership in a gang is not fundamental to his individual identity. They stopped short of that reasoning. They basically stated that they should not be required to change. But they stopped short of the full meaning of the immutability holding, which states that it is based on the fact that the issue is fundamental to one's identity. Gang membership is not fundamental to one's identity. No, no. You're going the same way the Ninth Circuit did. The fact is a former gang member cannot return to El Salvador without being killed. So that's what the factual findings were. The record is not entirely clear on that issue because, as Judge Flanagan pointed out, there are many ways of quitting a gang and there are people who have successfully quit the gang. I mean, that's not this record. That is based on this record, Your Honor, based on this record here. You can rely on it. It states on this record that the Salvadoran government does not have a policy or practice of refusing to assist those threatened or victimized by gang violence. See, now that's a different issue, the linkage between the government and the gangs. But the question is, would the gang here, what's it, MS-13? Would the gang target him with a green light if he went back? Yeah, even if the gang, we don't know that, Your Honor, but even if the gang targets him, because it's been a long time, it's been so many years. Yeah, and he's got a tattoo. And even the guy, Saico, his gang leader, he said Saico was killed. He heard that Saico was killed. So we don't even know that these particular members of the gang are still available who were there when he was a member, when he was a young guy. People have all grown up and many people change. And so we don't know that for a fact, Your Honor. But the issue here is that the 6th and the 7th Circuit did not reach the issue of the fact that gang membership is not fundamental to his identity. In fact, Mr. Martinez is doing everything to shed that identity of gang membership. And the way immutability is described in Acosta and in matter of CA states that that is a very, very important factor. And that is where the 6th and the 7th Circuit did not reach. They basically stopped at the fact that, oh, he should not be required to go back and join the gang. But they did not discuss the fact that prior gang membership is fundamental to his individual identity, much like any other factor in any other social group would be. Except that that is one form of one group, his former membership is a group that we will not recognize, and for good reasons. But the question is you have to recognize he chose to leave and was determined to leave because he didn't want to commit violence. And he is defining a group of persons who, by the fact that they were former gang members, cannot go back because they will be killed. Because they're in that social group as a former gang member. Yes, Your Honor. But that is a form of resistance to gang membership, Your Honor. And no court of appeals has ruled. He is resisting continued membership in the gang, Your Honor. He's not member. He's not.  Yes, but it is a form of resistance to being a member. Well, then you want to say it's just internal discipline. That's your argument. And that's what the Ninth Circuit relied on. Yeah, but that is also a form of resistance to continued membership in the gang. And we have held, no court of appeals in this country has held. But he's not continued membership. Yeah, but he's resisting the membership, Your Honor. He is resisting membership. That is the bottom line. No, he's resisting being killed. His group is going to be killed. Well, which is part of it. People who refuse to join gang members, who refuse to join in the first place, also are resisting gang membership. And the record shows, Your Honor, that people have been killed merely for resisting gang membership. And this country has said, no, they don't belong to a particular social group. Your Honor, there is a case on point in the Tenth Circuit. It's an unpublished decision in Quarter v. McKasey, where the Tenth Circuit squarely addressed this particular issue. In a case where an alien claimed that he was forced to join a violent fraternity. And the Tenth Circuit ruled that membership in a criminal group did not qualify as a particular social group under the mutable characteristic test. I have a little difficulty with your continued assumption that this man is a member of a gang group and is defining his membership. The concession I'm making to you from the cases is that membership in a gang is not a social group that the act recognizes. Yes, Your Honor. You have to recognize that the facts on this case depend on the fact that he has said, I am no longer a gang member. And I'm no longer a gang member because of my conscience. And I am stuck as a no longer member because every no longer member of gangs of MS-13 are targeted with the green. And that precisely is what the Tenth Circuit addressed in this case that I just cited, Your Honor. They just said the gang membership is criminal. No, they said he claimed that he was forced to join a fraternity and when he pulled out, he was subjected to serious harm. And quoted V. Mukasey in the Tenth Circuit. And the Tenth Circuit ruled that his past membership did not qualify as a social group. Well, I don't think his past membership has to be. The group is defined by somebody who has left a gang because of its violence and is now stuck with that membership. And because he is a member of this new group, he is going to, it's immutable. He either rejoins the gang when he goes back or he gets killed. Well, he doesn't have to rejoin the gang, Your Honor. And the record shows that there are ways, family membership, joining a church. There are other ways of avoiding being killed. And there is no record that people. You mean joining the church is going to avoid killing? I know God has a lot of power. Well, yes, Your Honor, I suppose. But even assuming, Your Honor, that the status of former gang membership in such an organization is technically immutable as, you know, you've stated, Your Honor. And as the Sixth and the Seventh Circuits have. To bring such claims within the realm of a particular social group is an attempt to exploit a perceived loophole rather than to find the true intent of the board's immutability finding. The INA certainly did not. Well, the immutability finding, the board just said things that were wrong. They said he was a gang member. They said that they relied on statements. Clearly shows, goes from the Casey case, and shows that this was internal discipline within the provisional Irish Republican Army. Amongst other decisions, other things that the board stated. Well, it's only two sentences. You know, it's very short. Yes. But the core issue is that the board found that it was not an immutable, that his membership in the gang or his past membership was. Because it was an internal discipline of the gang. Well, that was only like a sentence in the board's decision. Your Honor. Both the Ninth Circuit. No, the board. If you look at the board's decision, Your Honor. I've got it right here. It did state that even without those considerations, that the group was defined exclusively by the fact that its members had been subjected to harm. And that that was a circular reasoning. And it used that also as a basis for declining to consider this as a particular social group. In the second full paragraph on page five, the board did articulate that reasoning. And then later on, in the other paragraph beneath that, stated that it was due to the internal punishment. So that was not the only stated basis for the board's decision in this case, Your Honor. Well, the first statement, there's only two sentences. One deals with the Ninth Circuit and says, we agree with the board's appeals to the Ninth Circuit, which rejected gang members as a social group, whether inactive or former. And we have also previously rejected a claim that internal discipline of a violent organization. Yes, Your Honor. Those are the only two reasons? No, but I'm talking about the second full paragraph on page five of the board's decision, Your Honor, where it talked about circular reasoning. And it said that it was circularly defined. Where is that? What page are you on in the record? On page five in the record, in the second full paragraph, it gives a poignant reason for why it rejected a particular social group. And it said it was circularly defined. The second paragraph just addresses his argument. Yeah, it says that. They just set out what he's arguing, right? The respondent argues? Is that the paragraph? The respondent, yes, Your Honor. Well, he just goes, they go and describe that. And we saw that the social group must be one targeted for persecution, as noted by the Sixth Circuit. And then as the respondent did not show the gang members were concerned with whether he had committed any particular serious crimes, that part of the proposed definition is irrelevant. Further, the restriction is unnecessary as anyone who committed a particular serious non-political crime. You missed out a line there, Your Honor. As noted by the United States Court for the Sixth Circuit, the group cannot be defined exclusively by the fact that its members have been subjected to harm. Of course. That is, a particular social group must have existed before the persecution began. Over here, that social group had not existed. It is circularly defined. That's because it's a member of the gang, and the court has never recognized members of a gang. No, it is circularly defined. That is what the board is saying here. His group did not exist before the persecution began. His group is defined exclusively by the fact. I gather, if I understand your position correctly, what you're saying is that because this man was a member of the gang, that he is, because he was a member of the gang, he cannot be recognized as a social group under the statute because the gang persecutes and is violent and so forth. Is that your position? That is one of our positions, Your Honor. It is one of our positions, Your Honor. So how do you address the change of facts where he is no longer connected with the gang, he is totally severed, he's made totally clear he's out of the gang, I'm no longer a member, time passes, and because he was a member in the past, he's targeted for assassination. How do you address those people? And that is where, Your Honor, this issue comes into perspective. It is not just like persecution. It is not every harm that someone gets that amounts to persecution. I'm just using that as an analogy, Your Honor. Not every group can be classified as a particular social group. You have to pass a certain test. The test that the court has articulated here… Except the only issue is immutability. Is immutability. And the immutability is created by the fact that because of his status now, because of his status, this group of people that left, he goes back and he cannot go back without joining the group or being killed. Yeah, but a salient aspect over here, Your Honor, is the fact that you have to look at the group. It cannot be circulated. Is that commonality as distinct from immutability? Commonality? Actually, no, Your Honor. The issue here, in terms of the immutability issue, is that the petitioner's past membership in a particular social group is not fundamental to his identity. And that is a crucial issue here, Your Honor. That is what immutability really means. Being a past gang member is not fundamental to Mr. Martinez's identity, such that he should not be required to shed it. And what he's been doing so far is actually to disassociate himself from that group. For example, a homosexual, for instance, we wouldn't tell him to shed his identity. He is actually shedding that identity. There is nothing fundamental. He's made all attempts to shed it. He covers himself up. He doesn't want to be associated with the gang. See, you keep missing that. He wants to shed membership in the gang. Yeah, but he also doesn't want to be associated with the gang anymore. He's disassociating himself. He cannot disassociate himself as a former gang member without joining the gang. Precisely. Yes, Your Honor, that's the point. He can't join the group as a former gang member. He can't dissociate himself. He's stuck with that. He's a former gang member, and because of being a former gang member, he's identified as a target. And he can't shed himself with that. He can hide, but that doesn't get him out of the group. But that also goes back to the circular reasoning here. I don't understand the circular reasoning. That membership did not exist before he was persecuted, Your Honor. And that is one of the considerations that the board addressed in this case. So make it plain to us the circular reason. That seems to be the central part of your argument. If you start with the proposition that the gang membership in and of itself is not a social group, it's the former members we're talking about, and you're saying nothing happens until persecution occurs, and therefore you can't be? Yeah, you have to have been a group before the persecution began, sort of like maybe the Tootsies. They were a group before the persecution began. Well, he wasn't persecuted until he was shot. He left the gang out of conscience, and then because he was an ex-gang member and you're not supposed to leave, there were three assassination attempts on him. Yes, Your Honor, when I was reading that fact, just like people who have resisted gang membership. Many people who resisted gang membership have been shot at and have been killed. Let me ask this question. Are you saying you have to be a social group and then be persecuted? And that in this instance, persecution creates the social group? No, the social group has to have existed before. It creates the status. It's the persecution that did that. The group has to have existed before the persecution began. Well, isn't a group, as a former gang member, isn't that a group? Well, it is circularly defined by the persecution. The only reason why it is... So you're saying you can't define a former gang member. If you leave the gang, doesn't that make you a former gang member? Well, it makes you a former gang member, but that is not where the analysis stops, Your Honor. You have to look at so many other factors. Well, the only question on this case, on this appeal, is if that's a group, the only question is, is that group immutable? Precisely, Your Honor. That's the only question. That's the question. And the question is, he can't change his status in that group. His identity is created and cannot be changed. Well, that's where we differ, Your Honor, because it is not fundamental to his identity, and that is the standard that the board has used. Why isn't it fundamental? It's to his whole life. It is not fundamental, because he's trying to shed himself of that identity. He's not trying to shed himself of the identity of former gang member. Yeah, but he doesn't even want anybody to know that he's a former gang member, Your Honor. For the purposes of this case, yes. Sure he does. He doesn't want to be associated at all with that group, and he would rather not even be known as a former gang member. He doesn't want to be identified, so you're saying there's no identifiable group. Well, I don't want to get into the social visibility issue, because the board never addressed that in this case, and that's a totally separate issue. But just addressing what Judge Niemeyer said, I just wanted to. You think both the Sixth Circuit and the Seventh Circuit were off-base. Yes, we think they're off-base because of the policy concerns in this case, because it would create a backdoor approach for people who. No, no, you have the exceptions. The statute has a bunch of exceptions. That's a ghost argument. I mean, you have all the exceptions that are created in the statute. Oh, I'm not even talking about these exceptions, Your Honor. I'm talking about how it creates a backdoor approach for people who are former gang members who say, oh, I'm no longer a former gang member, now I want to seek asylum, whereas people who did an honorable thing and did not join a gang member are not allowed under the social group attribute. Well, if you don't join a gang member, that's a totally different fact. Yeah, but you get killed also, and that's a consideration. And that's on this record. There are instances here showing that people have been killed who are not gang members. That's not an issue in this case. It's not an issue in this case, but, Your Honor, you've been bringing up the issue of the fact that he's going to get killed. That makes it immutable. No, the fact that he's going to get killed is not what makes it immutable, Your Honor. It makes it immutable because he cannot go back and change his identity. It is the fact that it's fundamental to his identity, Your Honor. And it is not fundamental to his identity. That's what he's trying to do. He's trying to disabuse himself and move himself out of that identity. Do you see what you're saying? He's trying to remove himself from being a former gang member. Yes, Your Honor. He cannot remove himself from being a former gang member. He is always a former gang member. Well, yes, he's always a former gang member, but that is not immutable. And he's got a tattoo. It is not fundamental to his identity, and that is the crucial link here. I don't know why not. Well, because that is what the standard has been, and that is what the standard— No, I don't know why this man is not fundamental to him. That's who he is now. He's a former gang member. Well, Your Honor, he's a former gang member, but the test is, is that fundamental to his identity? Well, it's pretty fundamental. And that is the question. It's pretty fundamental, and he can't shake it. Well, it's not fundamental to his identity because he doesn't even want to be known as a gang member at all or even a former gang member. He would rather just be known as a person. Of course. He didn't—my gather is he didn't even join the gang voluntarily. Well, you know, he— This was not a situation where he— He wasn't physically coerced to attend all the meetings, Your Honor. He attended all the annual meetings. Yeah, he had to, didn't he? He wasn't forced to. He didn't think he was physically dragged. He went to parties, too. He went to parties, too. And yes, and he went to all the parties and attended all the functions of the group, you know. So it's—as we said in our brief, Your Honor, the issue raised by Amicus that he was a child and he was forced, that was not even addressed before the board, so it's unexhausted. And it's not an issue in this case, Your Honor. So, thank you. Thank you. Thank you very much, Your Honor. We will hear from Ms. Swin. Your Honors, I'd just like to make a few points on rebuttal. First of all, the Acosta test has two different parts. Either the shared characteristic must be immutable, that is, in this instance, a shared past experience that cannot be changed, or fundamental to either conscience or identity.  This group meets both of those tests. The decision to leave the gang is absolutely fundamental to Mr. Martinez's conscience. That's a decision that he made despite the fact that he knew he was going to be targeted for death. It doesn't get any more fundamental than that. In addition, as Judge Niemeyer has pointed out, it's unchangeable at this point. It's in the past. So what we ask this court to do is to trust the structure that Congress put in place, to consider the particular social group question, which is the question in front of this court, separately from the issue of the bars to eligibility. Congress set in place bars for people who have serious criminal pasts, and those are the bars. That's not an issue in this case. That could be an issue, but at this point, there's no evidence to support those issues. What the board did is a very narrow holding and said, this status of being a former gang member in El Salvador is not immutable. And it seems to me that is the only question. And if it's immutable, then they still have to go back and assess what that means in this case. Which is why this court can remand to the board so that they can apply the standard, which they didn't apply in the first place. So we have the decisions of the board and the immigration judge. The board only addressed immutability, and what I'm hearing is that's the only issue before us. You are saying that we don't review both decisions? Your Honor, I think that the board's decision is – My question is, do we review both decisions?  In this case, I think the board issued its own decision, so it's the board's decision that is – The board did not. So in order for it to review both decisions, they have to be incorporated. I want to understand this clearly, because if this is the standard that we go by, I want to make sure we put this in the way it is. That is, we've got a clear decision from the judge, the immigration judge, and we have a board. The board then makes its decision on immutability, and based upon that, that's all we review. Yes, Your Honor. That's where we are now. Yes. And we don't review that IJ decision at all? Not in this case, Your Honor. It depends on the way the board – Only if it's incorporated. Exactly, and the board issued its own decision in this case. Okay. Thank you, Your Honors. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Louise W. Flanagan